Hendrickson *v.* Wallace's executor.

Tobias C. Hendrickson and Isaac H. Sherman

*v.*

The Executor of Hugh Wallace, deceased, and others.

1. Parties having no common interest, but asserting several and distinct rights, cannot unite as plaintiffs in the same suit.

2. A misjoinder of plaintiffs must be taken advantage of by demurrer; if the defendant answers, the objection will be considered waived.

3. But, even when so waived, if the effect of the misjoinder is such as to embarrass the court, or to prevent it from doing complete justice, the court may, of its own motion, dismiss the complainant.

4. The court will usually dismiss, when it appears that the separate interests of the co-plaintiffs are of such a nature that they are likely, in the future progress of the cause, to come into conflict, and thus transform the suit into a contest between the plaintiffs.

5. Equity will reform deeds for the correction of mistakes, but, to warrant the exercise of this power, the proof of mistake must be clear and satisfactory.

On final hearing on bill and answer, and proofs taken before a master.

*Mr. John S. Applegate,* for complainants.

*Mr. Chilion Robbins,* for defendants.

The Vice-Chancellor.

This is a suit for the reformation of two deeds. The case of the complainants may be summarized as follows : Hugh Wallace died in March, 1871, leaving a will, by which he gave his executor power to sell, either at public or private sale, all his real estate except a lot devised to one of his children. At the time of his death, the testator was seized of a tract of land situate in the town of Red Bank, Monmouth county, with a frontage on Mechanic street of two hundred feet, and extending back one hundred and fifty feet. Some years before his death, the testator had divided

Hendrickson *v.* Wallace's executor.

this tract into building lots, of forty feet each, and had a map made of it. Afterwards, he laid out a street upon the map, so as to cover nearly the whole of one of the lots, though it was never used as a street, nor opened for use. In April, 1872, the executor named in the will, made a verbal contract with the complainant Hendrickson, to sell to him the western half of this tract for $1,500, and, on the 12th of the same month, executed a deed to him in fulfill-ment, as it was supposed, of the contract. In July, 1872, the executor sold the residue of the tract to the com-plainant Sherman, for the same price for which he had sold the other; and, on the 3d of December, 1872, he executed a deed to Sherman, conveying to him, as it was supposed, what he was entitled to under his contract. The prepara-tion of the deeds was entrusted entirely to the executor, and, when they were delivered, they were accepted by the grantees without examination, and sent at once to the clerk's office for record. The grantees seem to have reposed the utmost confidence in the executor's honesty and carefulness, and to have acted as though anything coming from him might be safely accepted without scrutiny. It was subsequently discovered that the deeds did not convey all the lands the grantees had purchased. Instead of giving each a frontage on Mechanic street of one hundred feet, as they were entitled to according to the terms of their con-tracts, Hendrickson's deed conveys eighty feet of the west-ern part, and Sherman's deed eighty feet of the eastern part, leaving a strip forty feet in width lying between them. The object of the present suit is to have these deeds so reformed as to embrace the whole tract purchased by each.

The suit is undefended by the vendor. The beneficiaries under the will of the testator have been made parties, and three of them have answered, denying that the contracts of purchase embraced the land in controversy.

The summary of the complainants' case, as just given, shows, very plainly, a misjoinder of parties. Parties having no common interest, but asserting several and distinct

rights, cannot unite and seek redress in a joint suit, though their several rights of action may be against the same person. *Story's Eq. Pl.* § *279.* The complainants purchased distinct parcels of land, by separate contracts, made at different times, and neither, therefore, has the slightest interest in, or connection with, the contract of the other. They have no community of interest whatever. The only respect in which it can be said that they have the same interest is, that their positions are similar. They each happen to have a right of action against the same person, for causes almost identical in their facts. This, however, is not sufficient to give them a joint right of action.

Misjoinder of plaintiffs is an objection never treated with favor at the final hearing. As a general rule, a defendant must avail himself of it by demurrer, or lose it forever. If he attempts to answer the complainant's case, by answering on the merits, the objection will be considered waived, so far as he is concerned, and the court will proceed to make a decree regardless of it, if it can do justice to all parties. But, if the effect of the misjoinder is such as to embarrass the court and prevent it from giving appropriate relief and doing justice to all the parties, it may, of its own motion, dismiss the bill. *Veghte* v. *Raritan Water Power Co., 4 C. E. Gr. 144; Green* v. *Richards, 8 C. E. Gr. 32; Annin* v. *Annin, 9 C. E. Gr. 188; Lyman* v. *Place, 11 C. E. Gr. 31; Lambert* v. *Hutchinson, 1 Beav. 286; Story's Eq. Pl.* §§ *237, 283.*

The court will dismiss, on its own motion, usually when it appears that the separate interests of the co-plaintiffs are of such a nature that they are likely, in the future progress of the cause, to come into conflict, and thus transform the suit into a fight between the plaintiffs. *Jacobs* v. *Lucas, 1 Beav. 436; Griffith* v. *Vanheythuysan, 15 Jur. 421.*

There is no reason to apprehend that any such difficulty can arise in this case, nor that any other can arise which will embarrass the court, or prevent it from doing complete justice to all parties. The infirmity of the suit in this

respect, I think, must be considered cured by the waiver of the defendants.

The power of courts of equity to reform deeds for the correction of mistakes need not be vouched for, at this day, by the citation of precedents.    It stands among their most ancient and useful functions.    To warrant its exercise, however, the proof in demonstration of mistake must be clear and satisfactory, such as produces a strong conviction of its truth.    The courts will not change what is written, upon loose, doubtful or equivocal evidence.

The proof of mistake here is as strong as human testimony can make it.    Both parties to the Hendrickson contract swear, that it was distinctly agreed that Hendrickson's purchase comprehended the western half of the tract fronting on Mechanic street and lying between the lot of Alice Ludlow on the west, and the lot of Edward M. Throckmorton on the east.    With equal positiveness, both parties to the Sherman contract swear, that it was distinctly understood that Sherman's purchase embraced the residue of this tract. The vendor says that he intended that the deed he made to each should convey the land purchased by each, and that the mistake in the descriptions inserted in the deeds resulted from a misunderstanding between his scrivener and himself. He also admits that, when his attention was called to the fact that there was a strip of land lying between the two tracts, not embraced in either deed, that he said there was a mistake, that he had sold half of the whole tract to each, and had intended to convey half to each, and that he would try to have the mistake rectified.    If this evidence is believed, all ground for controversy is removed, and the court should make the deeds express what the parties intended they should declare.

The case made by defendants exhibits nothing which raises a doubt as to the truthfulness and entire accuracy of this evidence.    So much of their evidence as attributes to the executor expressions tending to show that, in his conferences with the beneficiaries under the will, he represented

that he was negotiating contracts with the complainants materially different, as to the quantity of land to be conveyed, from those now proved to have been made, can have no force against the complainants. As to them, such evidence is clearly inadmissible.

Nor do I find any evidence in the case which, when read fairly, shows that they have done or said anything at all inconsistent with the claim they now assert. It is true, they offered to buy the land in controversy after they knew of the mistake, but their offer was not made until they had first asked for a rectification and been refused. Their offer was made when they were in a position where they were required either to give up the land or buy it again, or to attempt to vindicate their rights by having recourse to the courts. To say that an offer to purchase, made under such circumstances, was an abandonment of their right, or a confession that they had no right, would be a perversion of the facts. The complainants' case is proved so fully and conclusively that I am thoroughly convinced they are entitled to a decree.

Where a deed conveys only part of the land agreed to be conveyed, and the vendee does not intend to relinquish any part of his purchase, but accepts, in consequence of the mistake of the vendor, a conveyance of less land than he is entitled to under his contract, he is not precluded by his acceptance from maintaining an action to recover the residue. *Conover* v. *Wardell, 5 C. E. Gr. 271; Rowley* v. *Flannelly, 3 Stew. 614.* Reformation, and not specific performance, is the proper relief to be given in such a case. *Conover* v. *Wardell, 7 C. E. Gr. 497.*

A decree reforming both deeds, so that each shall convey one hundred feet on Mechanic street, and also in the rear, will be advised.